9 USPQ 2d 1061 (1988)

v.2 F140

Hearing:
July 20, 1988

T. Henderson
Paper No. 44

FOR PUBLICATION IN FULL

U. S. DEPARTMENT OF COMMERCE
PATENT AND TRADEMARK OFFICE

———

Trademark Trial and Appeal Board

———

Nina Ricci, S.A.R.L.
v.
E.T.F. Enterprises, Inc.

———

Opposition No. 69,977 to application Serial No. 416,354
filed March 8, 1983.

———

Robert H. Ware, Melvin I. Stoltz and Alfred A. Fressola for Nina
Ricci, S.A.R.L.

Gottlieb, Rackman & Reisman, P.C. for E.T.F. Enterprises, Inc.

———

Before Rice, Simms and Krugman, Members.

Opinion by Simms, Member.


Nina Ricci, S.A.R.L., a French corporation, has opposed
the application of E.T.F. Enterprises, Inc., a New York corpora-
tion, to register the mark VITTORIO RICCI for handbags in Class
18, scarves, neckties, blouses, sweaters, coats, jackets and
pants, in Class 25, and retail store services in the areas of
shoes, clothing and accessories, in Class 42.[1]  As grounds for

---

[1] Serial No. 416,354, filed March 8, 1983, claiming use since
April 20, 1975.  In the application the consent of Todd Vittorio

opposition, opposer asserts that it began using the mark NINA RICCI in this country in 1947 for perfumes, fragrances and related cosmetic and toiletry products; that since 1961 NINI RICCI clothing and accessories have been sold in this country by licensed manufacturers and distributors; that this clothing includes women's dresses, skirts, blouses, suits, coats, furs, gloves, sleepwear, lingerie, jewelry, men's neckties, ascots, mufflers, scarves, handkerchiefs, eye glasses and sunglasses; that NINA RICCI tote bags, shopping bags and umbrellas have been sold as premiums with NINA RICCI fragrances since 1977; that opposer has also used the marks MADEMOISELLE RICCI, SIGNORICCI and CAPRICCI; that RICCI is the single unifying name and the dominant and most significant name identifying and characterizing all of opposer's marks; that the mark NINA RICCI has acquired goodwill and fame; that applicant adopted the fictitious name VITTORIO RICCI for men's shoes in 1975; that in 1977 Todd Finkel (applicant's president) changed his name to Todd Vittorio Ricci; that in 1975 opposer opposed applicant's application to register the same mark for sweaters, belts, neckties, shoes and women's blouses; that while the Board sustained opposer's opposition, on appeal the United States District Court for the Southern District of New York reversed the Board's ruling and found that VITTORIO RICCI for shoes and belts was not confusingly similar to opposer's marks but

Ricci to the use and registration of the mark is of record.

2

did not rule on the issue of likelihood of confusion with respect to applicant's mark on neckties, scarves and blouses, because applicant was not then using the mark on those goods; that only nominal or token sales have been made of applicant's neckties, wallets, jacket-blouses or any garments or accessories other than shoes and belts; that 95-99 percent of applicant's business is high fashion men's and women's shoes; that any nominal or token uses of the mark VITTORIO RICCI for clothing have been discontinued and abandoned; that applicant's use of VITTORIO RICCI for handbags began after 1981, after opposer's sales of NINA RICCI tote bags and shopping bags had commenced; that applicant's retail sales do not include clothing and accessories; and that applicant's mark used on handbags and clothing so resembles opposer's marks previously used and registered for perfume, handbags, women's undergarments, hats, scarves, ties and other goods, as to be likely to cause confusion. As relief, opposer requests that applicant's application for registration be denied with respect to its Class 18 and 25 goods and that the registration with respect to Class 42 be confined to retail store services in the areas of shoes and belts.

Applicant has denied the essential allegations of the opposition except that it has admitted that it has made sales of shoes and belts since 1977. As affirmative defenses, applicant asserts that this opposition is barred by the doctrines of res

3

judicata and collateral estoppel and that registration to applicant should issue because the goods set forth in the application are related to or are in the natural area of expansion of the goods to which applicant was found entitled to a registration in the prior proceeding.

The record of this case consists of testimony depositions made of record by opposer,[2] portions of a discovery deposition of applicant's president relied upon by opposer's notice, and the application file.

Because opposer has made of record with its pleading and during trial status and title copies of its pleaded registrations, there is no issue with respect to priority. Before discussing the issue of likelihood of confusion, a brief summary of the prior litigation is helpful.

### Prior Litigation

On March 17, 1975, applicant filed an application to register the mark VITTORIO RICCI for sweaters, belts, neckties, shoes and women's blouses. When the mark was published for op-

---

[2] During the course of this proceeding opposer filed a motion to use a testimony deposition from the prior proceeding, pursuant to Trademark Rule 2.122(f). For some reason, this motion was not ruled upon at the time. Since applicant has not objected to the motion, it is now granted. We note that the deposed party was applicant's president. Because applicant made no request to recall this witness for reexamination or otherwise sought to take his testimony during trial to rebut his earlier testimony, applicant's right to do so under Trademark Rule 2.122(f) is deemed waived.

4

position, opposer filed a notice of opposition reciting many of the same facts recited in the instant opposition. In an opinion reported at 203 USPQ 947 (1979), the Board concluded that the goods of the parties comprise closely related if not identical goods, and are so commercially related that confusion in trade would be likely to result if the goods of the parties were sold under the same or confusingly similar marks. While acknowledging that Ricci is a common surname of Italian origin, the Board nevertheless held, at 952:

> After carefully considering the record of the present case, we believe that in view of the long and extensive use and promotion and the accompanying good will, fame and reputation which opposer has acquired in the name "RICCI" and in its famous marks which embody such term as the dominant and most significant element thereof, that opposer has carved out quite a niche for itself in relation to such marks, and that purchasers and prospective purchasers of opposer's products, having become familiar with opposer's various "RICCI" marks in the fields of perfumery and clothing, would upon coming in contact with applicant's mark "VITTORIO RICCI" believe that such mark was just another of opposer's related marks, and assume that the goods sold thereunder had their origin in or were in some way connected with opposer.

Applicant appealed by filing a civil action in the district court for the Southern District of New York. Opposer, as defendant, asserted four counterclaims including a claim for trademark infringement and false designation of origin. After a trial de novo wherein both parties were permitted to introduce

5

additional evidence, the district court reversed the Board in an opinion reported at 523 F. Supp. 1147, 213 USPQ 517 (1981). The court found that opposer's mark NINA RICCI is a strong and distinctive mark which has "secondary meaning," with the mark being strongest in the field of fragrances, which constitutes the vast majority of opposer's business in this country; that opposer's sales of products (under licensing agreements) other than fragrances, such as women's clothing, furs, gloves, sleepwear, jewelry, scarves, handbags, etc., have been a small percentage of its overall sales; that "at present" there is very little overlap between opposer's and applicant's products in the United States since opposer does not market applicant's primary product (footwear) and applicant does not market opposer's primary product (fragrances); that the only overlap between the products of the parties is in handbags (goods not covered in applicant's then-pending trademark application); that opposer does not plan to sell footwear in the future; that applicant has no plans to market fragrances; that the parties' non-overlapping products are sold in many of the same department stores; that it appears likely that opposer will bridge the gap between its products and those of applicant to some degree but that neither party plans to expand into the primary product line of the other; that the Ricci name in the marks of both parties is invariably modified by a given name; and that the customers of both parties are fashion conscious, high

6

income and quite sophisticated, and not likely to be misled by two marks which share the same surname but have different first names. The court concluded, at 525:

> In light of these perceived deficiencies [in the Board's opinion] and weighing all seven factors discussed above, the Court finds with thorough conviction that the Board's determination that plaintiff's [applicant's] trademark, as it applies to shoes and belts, was confusingly similar to defendant's [opposer's] registered marks was erroneous. Accordingly, the Commissioner of Patents is directed to allow registration of plaintiff's "Vittorio Ricci" trademark for shoes and belts. However, given the total absence of evidence regarding neckties, sweaters, and women's blouses, the Court declines to direct the Commissioner of Patents to allow registration of the "Vittorio Ricci" mark for those products.

Applicant's right to register with regard to sweaters, neckties and women's blouses was denied without prejudice to its re-application in this Office, and applicant's counterclaims were dismissed. Applicant now has a registration of the mark VITTORIO RICCI for shoes and belts.

### The Record before Us

Opposer is a French couturier house established by the high-fashion dress designer Nina Ricci in the 1930s. According to opposer's witness, opposer first began selling NINA RICCI perfumes in this country in 1947. According to this record, opposer has been selling non-fragrance products such as ready-to-wear and accessories in this country since at least 1962 (under the mark

7

MADEMOISELLE RICCI), with high-fashion gowns being shown here the year before and available for order. In 1962, opposer's NINA RICCI fragrances and its fashion clothing were advertised together. Beginning as early as 1977, NINA RICCI shopping bags were available as purchase-with-purchase gifts. Other bags were available beginning in 1981. For the years 1981-86, wholesale sales of NINA RICCI fragrance products in this country exceeded $200 million ($350 million at retail). During this period of time advertising and sales promotion expenditures under the mark were around $37 million. Wholesale sales of NINA RICCI hosiery, sleepwear and lingerie for the years 1981-86 were around $11 million, women's dresses, skirts, sweaters, blouses, suits and slacks garnered $3.7 million, and opposer's sales of women's coats, raincoats, handbags, evening bags, tote bags, scarves, neckwear and jewelry have been substantial. Opposer also controls the operation of a retail boutique under its name in Beverly Hills, California. This store offers a complete line of NINA RICCI products including apparel, accessories and perfume. Opposer advertises its products on television and by the print media, spending over $10 million on such advertising from 1970 to 1980.

Applicant began selling VITTORIO RICCI shoes, belts, handbags and billfolds in 1975. While the name was fictitious when adopted, applicant's president, Todd Finkel, changed his name to Todd Vittorio Ricci in 1977, during the course of the previous

8

opposition proceeding before the Board. Applicant's principal business has been retail sales of shoes and belts at its New York City stores. However, applicant has also sold its shoes through other retail stores, such as Saks Fifth Avenue and Neiman Marcus, where opposer has sold its goods. While applicant has continuously sold shoes, belts, handbags and scarves, it is clear from the depositions of applicant's president that at the time of trial it was not selling blouses, sweaters, coats, jackets and pants. With respect to applicant's plans to resume use of its mark on this clothing, the following responses given by applicant's president during a discovery deposition are noteworthy.

Q.64 Are they [leather jackets, coats, pants and vests] being offered today?
A. Today, no, they are not. Although we are discussing licensing procedures with people. We have people coming in to discuss this.

     \*         \*         \*

Q.83 Are blouses being sold today in your stores?
A. We are not currently selling blouses. Although, as I said, we are working on a situation right now which will allow us to sell all manner of garments in shops.

     \*         \*         \*

Q.104 Just to round out the picture, you mentioned some plans that you were now making or discussions you were now having. Subject to your counsel's objection that it might be confidential, I would like to ask you what those plans are with respect to all the categories of products we have discussed?...
A. We are currently discussing with various, in some cases, investment groups

9

and in other cases large companies, the proliferation, call it what you will, of Vittorio Ricci stores in other areas of the country.

Q.105 What product lines would they carry?

A. We have not gotten down to a specific product line. Basically, we are discussing what Vittorio Ricci now sells and the potential for expanding sales in many areas. As you know, retail space is growing exceeding [sic] expensive, and it is very important to these parties that we have the ability to sell as wide a range of product line as possible in order to pay the rent and to justify the investment required in developing such joint venture agreement.

*       *       *

Q.113 Let's ask to [sic] the Columbus Avenue store.

A. That is a year old. We do not currently offer clothing. However, we will offer clothing. We are awaiting the proper deal to make this happen. We have negotiated the right to sell clothing in our lease. It is so stated in our lease. We took extra space or enough space in the store. It is a rather large store, in order to accommodate the full gamut of fashion items, specifically including clothing. That was part of out original lease agreement.

## Abandonment

Abandonment, being in the nature of forfeiture, must be strictly proved. The burden of establishing nonuse for two consecutive years falls on the plaintiff. Wallpaper Manufacturers, Ltd. v. Crown Wallcovering Corp., 680 F.2d 755, 214 USPQ 327, 332 (CCPA 1982) and P.A.B. Produits et Appareils de Beaute' v. Satinine Societa in Nome Collettivo di S.A.e.M. Usellini, 570 F.2d 328, 196 USPQ 801, 804 (CCPA 1978). Strict proof of a two-year

10

period of nonuse is required. Lipton Industries, Inc. v. Ralston Purina Co., 670 F.2d 538, 213 USPQ 185, 191 (CCPA 1982). Since the opposition was filed on September 17, 1984, it was incumbent upon opposer to prove that applicant's mark had been abandoned by nonuse which continued for at least two consecutive years prior to the filing of the opposition, in other words, since at least September 17, 1982. We learn from Mr. Ricci's responses given during his discovery deposition taken in 1986 that applicant was selling VITTORIO RICCI blouses, sweaters, coats, jackets, neckties and pants as late as 1982 and 1983. See also opposer's Exhibit 136. Therefore, opposer has failed to make out a prima facie case of abandonment as result of nonuse of the mark for applicant's goods for at least two years prior to the filing of the opposition. (As noted above, there is no dispute that applicant continues to sell handbags and scarves under the mark.) See P.A.B. Produits, supra. Moreover, in view of the testimony quoted above, it is clear that applicant has no intent not to resume use of the mark on these items of clothing. See International Telephone and Telegraph Corp. v. International Mobile Machines Corp., 800 F.2d 1118, 231 USPQ 142 (Fed. Cir. 1986). Accordingly, despite interrupted use, we conclude that applicant has not abandoned its mark for clothing.

## Likelihood of Confusion

It is clear that the prior proceeding does not preclude this litigation under the doctrine of collateral estoppel. That

11

is because the court did not determine the issue of likelihood of confusion with respect to any of applicant's goods or services now before us. Nevertheless, we believe that the Court's opinion offers some guidance to the Board on this issue. Indeed, even at the time of the Court's decision in 1981, both parties were selling handbags under their respective marks and the Court noted that applicant planned to expand its leather products area by marketing leather coats, jackets and ready-to-wear. (213 USPQ at 524). Despite the likelihood of opposer and applicant bridging the gap between their products and the strength of the mark NINA RICCI for apparel, the Court found no likelihood of confusion and dismissed opposer's counterclaims for trademark infringement and unfair competition. For the reasons expressed below, we find that even though some of the parties goods are, for our purposes, identical or highly related, the marks are sufficiently different that there is no likelihood of confusion.[3]

---

[3] Indeed, subsequent to the issuance of applicant's registration covering shoes and belts, opposer sought and obtained a registration of its mark for shoes. In its brief, at 22, applicant asks rhetorically:

> If the identical goods, shoes, present no
> problem when sold under the two allegedly
> "confusing" marks to the point where Opposer
> continues to maintain its registrations for
> those goods, then how can Opposer contend that
> the presence of the VITTORIO RICCI registered
> mark on other identical items of apparel should
> be rejected?

12

As the court noted, both parties use the surname Ricci, a relatively common Italian surname, with different first names. These names, NINA and VITTORIO, have obvious differences in sound, appearance and connotation, opposer's mark being the name of a woman while applicant's mark is of the masculine gender. Moreover, we note that, despite contemporaneous use of the respective marks on similar if not identical products for at least ten years, there have been no reported instances of actual confusion. Finally, the District Court commented that if charged with considering equitable factors, it would find that applicant adopted its mark in good faith and without intent to capitalize on opposer's marks. Accordingly, we believe that confusion is unlikely.

Decision: The opposition is dismissed.

J. E. Rice

R. L. Simms

G. D. Krugman
Members, Trademark
Trial and Appeal Board

OCT 12 1988

13