NINA RICCI, S.A.R.L. and Jacqueline Cochran, Inc., Plaintiffs,

v.

GEMCRAFT LTD., Alcourt and Associates, Ltd., and Jaytab Industries, Inc., Defendants.

No. 85 Civ. 2044 (SWK).

United States District Court, S.D. New York.

July 9, 1985.

---

Cowan, Liebowitz & Latman, P.C. by Arthur J. Greenbaum, Louis J. Ederer, New York City, for plaintiffs; Mattern, Ware, Stoltz & Fressola, P.C. by Robert H. Ware, Melvin I. Stoltz, New York City, of counsel.

Cooper, Dunham, Clark, Griffin & Horan by Gerald W. Griffin, Peter D. Murray, Thomas G. Carulli, New York City, for defendants.

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

This case involves a malodorous dispute between the manufacturers of two fragrant perfumes over the right to use the words "L'Air" in the appellation of their products. Plaintiffs have moved for a preliminary injunction barring defendants from calling their perfume (and any new related products they market) "L'air D'or." For the reasons stated below, plaintiffs' motion is denied.

## BACKGROUND

Plaintiffs commenced this action on March 15, 1985, by filing a complaint alleging trademark infringement, unfair competition, and dilution under New York law. On the same day, plaintiffs moved for a temporary restraining order and a prelimi-

nary injunction restraining defendants' activities. The parties stipulated to certain voluntary restraints upon defendants' activities and to a briefing schedule on plaintiffs' motion for a preliminary injunction. The Court has received lengthy, and excellently prepared, briefs from the parties and numerous affidavits detailing some of the facts involved. The Court further held an evidentiary hearing on April 4, 1985, which was continued and completed on April 15, 1985. Based upon the pleadings, the briefs and affidavits submitted on the motions, and, especially, the evidence adduced at the hearing, the Court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

Plaintiff Nina Ricci, S.A.R.L. ("Ricci"), a French corporation doing business as "Parfums Nina Ricci—Paris," is a major international manufacturer of, among other things, cosmetics, perfumes, and other toiletries. Plaintiff Jacqueline Cochran, Inc. ("Cochran"), a New Jersey corporation with offices in New York City, is the exclusive distributor in the United States of Ricci's perfumes and related products. Ricci manufactures and Cochran distributes and sells a well-known fragrance line under the name "L'Air du Temps."[1] Ricci is the owner of a federal trademark registration for L'Air du Temps for perfumery, registered on June 4, 1946, and renewed on June 4, 1966.

L'Air du Temps has been sold in the United States since 1947. Currently, L'Air du Temps is available in many forms, including the following: perfume; eau de perfume; eau de toilette; lotions; dusting powder; soaps; bath oils; and creams. L'Air du Temps products are available in approximately 3,000 stores and boutiques around the country. L'Air du Temps now ranks among the five best-selling fragrance lines in the United States with annual wholesale sales of approximately $40 million. Plaintiffs spend approximately

---

1. "L'Air du Temps" has been defined, literally, as "the air of time," and idiomatically as "timelessness," "in the air," or "of the moment." (*See* Transcript., p. 37; Defendants' Memorandum of Law, p. 29.)

$10 million annually on advertising and promoting L'Air du Temps products.

L'Air du Temps perfume is bottled in a unique flacon manufactured by Lalique, a French crystal maker. Perched atop the stopper on this crystal flacon is a pair of doves. The other L'Air du Temps products are packaged in glass or plastic containers, most of which bear doves either molded or embossed thereon. All the L'Air du Temps products are boxed in pale yellow cardboard boxes, and many are wrapped with a pale yellow wrapping paper, each prominently displaying the name Nina Ricci and also the name L'Air du Temps.

For the Christmas 1984 selling season plaintiffs decided to change the packages of some of the L'Air du Temps products (except the perfume), apparently in an attempt to "modernize" and upgrade the packaging. In this regard new containers were produced for some of the products with gold doves and assorted flora embossed on the glass containers. Other of the products were wrapped in gold wrapping paper also bearing the imprint of doves and assorted flora. Plaintiffs, in this action, refer to that new packaging as the "golden theme." Plaintiffs expended a great deal of time, effort, and money promoting this new collection of L'Air du Temps products, and referred to the items repackaged in this promotion as the "Les Colombes d'Or" collection.[2] The name "Les Colombes d'Or," however, was not used in any promotions directed at the consumer, nor is it inscribed on any of the gold packaging used for the collection. Indeed, there is no indication that any consumer has ever seen or heard the term.

Defendant Alcourt and Associates Ltd. ("Alcourt") is a Canadian company engaged primarily in the graphic printing business. Defendant Gemcraft Ltd. ("Gemcraft") is a Canadian company engaged primarily in the manufacture of fine jewelry. Defendant Jaytab Industries Ltd. ("Jaytab") is a New York company engaged primarily in the sale of precious stones used in the manufacture of jewelry.

In addition to their normal operations, Alcourt manufactures and Gemcraft and Jaytab distribute a unique perfume containing flakes of pure gold currently being marketed under the name "L'air D'or."[3]

Defendants expended a great deal of time, effort, and money developing the perfume product and preparing advertising and promotional materials to introduce L'air D'or perfume to the marketplace. L'air D'or perfume was introduced first at a jewelry trade fair in Canada in July, 1984. L'air D'or was then made available to the general public in Canada for purchase at Birk's jewelry stores sometime in mid-September, 1984. L'air D'or was introduced for sale in the United States at Bloomingdale's department stores in mid-November, 1984. At present L'air D'or is available only as a perfume (in two generally available sizes—one-quarter ounce and one ounce). Defendants hope to expand the product line into other toiletry forms, such as colognes, dusting powders, lotions, and soaps. L'air D'or perfume can be purchased in a limited number of department stores, perfumeries, and jewelry stores in the United States.

L'air D'or perfume is bottled in a miniature decanter-like bottle. The bottle is then housed in a plush burgundy velvet vault-like box, which, in turn, is packaged inside a burgundy cardboard box. The boxes are then wrapped with burgundy wrapping paper. The boxes and the wrapping paper are emblazoned with the L'air D'or logo.

## DISCUSSION

Plaintiffs have moved for a preliminary injunction which would

enjoin [ ] and restrain [ ] defendants, their agents, servants, employees and attorneys and all persons in active concert and participation with them, ... from, in any manner, either directly or indirectly, using L'AIR or L'AIR D'OR, alone or in combination, as trademarks in connection with the sale, offering for sale, pro-

---

2. "Les Colombes d'Or" means "the doves of gold."

3. "L'air D'or" means "the air of gold" or "the essence of gold."

motion and advertising of perfumes and fragrance products, or using any other colorable imitation of plaintiffs' trademark L'AIR DU TEMPS or L'AIR, alone or in combination with plaintiffs' trademark LES COLOMBES D'OR; or from otherwise falsely designating or representing the origin of defendants' goods or suggesting in any way that defendants' goods have been approved or sponsored by, or are in any way associated or connected with plaintiffs; or from unfairly competing with plaintiffs by trading off plaintiffs' business reputation and goodwill, and by diluting plaintiffs' distinctive L'AIR DU TEMPS and L'AIR marks.

■ The test of whether a party is entitled to the extraordinary relief of a preliminary injunction is well established in this Circuit. In order "[t]o obtain a preliminary injunction, a plaintiff must ordinarily show '(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief.'" *Stewart v. INS*, 762 F.2d 193, 198–99 (2d Cir.1985) (*quoting Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir.1979)). As the quoted standard indicates, a showing of irreparable harm is a requisite element for obtaining a preliminary injunction under either prong of the standard—it is "an absolute requirement for an award of injunctive relief." *Stewart*, at 199; *see also Buckingham Corp. v. Karp*, 762 F.2d 257, 262 (2d Cir.1985) ("The linchpin of such interim relief is that threatened irreparable harm will be prevented by that injunction."); *Triebwasser & Katz v. American Telephone & Telegraph Co.*, 535 F.2d 1356, 1359 (2d Cir.1976); *Sugarhill Records Ltd. v. Motown Record Corp.*, 570 F.Supp. 1217, 1219 (S.D.N.Y.1983). The Court finds that plaintiffs in this case have not made a

sufficient showing of irreparable harm to justify injunctive relief.

■ Plaintiffs correctly argue that a showing that there is a substantial likelihood of confusion between the marks or the products constitutes a sufficient showing of irreparable harm to justify injunctive relief in a trademark infringement case. *See In re Vuitton et Fils, S.A.*, 606 F.2d 1, 4 (2d Cir.1979). Plaintiffs must also show that this likelihood of confusion exists in order to demonstrate their likelihood of success on the merits of their federal claim, *see Spring Mills, Inc. v. Ultracashmere House, Ltd.*, 689 F.2d 1127, 1129 (2d Cir. 1982), and their state anti-dilution claim, *see Beneficial Corp. v. Beneficial Capital Corp.*, 529 F.Supp. 445, 451–52 (S.D.N.Y. 1982). The test of whether there is a likelihood of confusion is whether "an appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed simply confused, as to the source of the goods in question." *Spring Mills, Inc.*, 689 F.2d at 1129 (*quoting Mushroom Makers, Inc. v. R.G. Barry Corp.*, 580 F.2d 44, 47 (2d Cir.1978), *cert. denied*, 439 U.S. 1116, 99 S.Ct. 1022, 59 L.Ed.2d 75 (1979)). Several factors should be considered when assessing the likelihood that ordinarily prudent purchasers will be confused, including

the strength of [the prior user's] mark, the degree of similarity between the two marks, the proximity of the products, the likelihood that the prior owner will bridge the gap, actual confusion, ... the reciprocal of defendant's good faith in adopting its own mark, the quality of defendant's product, and the sophistication of the buyers.

*Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492, 495 (2d Cir.), *cert. denied*, 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961).[4] The so-called *Polaroid* factors are not, however, exclusive, nor were they ever intended to be exclusive. *See Polar-*

---

**4.** Although the *Polaroid* factors were initially designed to decry likelihood of confusion between non-competing goods, they have been applied to determine whether there is a likelihood of confusion between competing goods as well.

*See American Int'l Group, Inc. v. London American Int'l Corp.*, 664 F.2d 348, 351 (2d Cir.1981); *Vitarroz Corp. v. Borden, Inc.*, 644 F.2d 960, 965–67 (2d Cir.1981).

*oid,* 287 F.2d at 495 ("Even this extensive catalogue does not exhaust the possibilities—the court may have to take still other variables into account."). Other factors which have been applied, and which are applicable here, are the senior user's delay in asserting its claim, *see Chandon Champagne Corp. v. San Marino Wine Corp.,* 335 F.2d 531, 535–36 (2d Cir.1964); *cf. Citibank, N.A. v. Citytrust,* 756 F.2d 273 (2d Cir.1985) (delay in seeking preliminary injunction demonstrated want of irreparable harm; no analysis of likelihood of confusion), and the balance of the conflicting interests of the two users, *see McGregor-Doniger Inc. v. Drizzle Inc.,* 599 F.2d 1126, 1140 (2d Cir.1979); *Chandon Champagne Corp.,* 335 F.2d at 535–36.

■ No single factor is determinative. Each of the factors must be considered independently and in the context of all the other factors. *See, e.g., Plus Products v. Plus Discount Foods, Inc.,* 722 F.2d 999, 1004 (2d Cir.1983); *Kiki Undies Corp. v. Promenade Hosiery Mills, Inc.,* 411 F.2d 1097, 1099 (2d Cir.1969). While the determination based on the required balancing of all the factors "often depends on the similarity of the marks and the proximity of the products," *Vitarroz,* 644 F.2d at 966, no talismanic formula exists for balancing the relevant factors. The facts of each case must be weighed. The Court recognizes that with this balancing of factors "few answers will be written 'in black and white. The grays are dominant and even among them the shades are innumerable.' " *Burger King Corp. v. Rudzewicz,* ——— U.S. ———, ——— n. 29, 105 S.Ct. 2174, 2189 n. 29, 85 L.Ed.2d 528 (1985) (*quoting Kulko v. Superior Court of California,* 436 U.S. 84, 92, 98 S.Ct. 1690, 1696, 56 L.Ed.2d 132 (1978)).

At the outset, it is important in this case to determine what marks are being compared. Plaintiffs contend that L'air D'or infringes their rights in L'Air du Temps, L'Air (standing alone), and Les Colombes d'Or.

■ Plaintiffs have not obtained a federal trademark registration for Les Colombes d'Or. Thus, secondary meaning must be demonstrated before plaintiffs can invoke the protection of the federal trademark laws. *Vibrant Sales, Inc. v. New Body Boutique, Inc.,* 652 F.2d 299, 303 (2d Cir. 1981). Plaintiffs have not demonstrated that any consumer associates Les Colombes d'Or with goods emanating from a particular source. Indeed, plaintiffs have not shown any consumer-directed use of the term "Les Colombes d'Or." Thus, plaintiffs have failed to demonstrate that Les Colombes d'Or has a secondary meaning. Furthermore, defendants have demonstrated that their use of L'air D'or predated plaintiffs' public use of Les Colombes d'Or. Accordingly, for the purpose of determining plaintiffs' entitlement to interim relief, plaintiffs have not demonstrated a protectible trademark interest in Les Colombes d'Or. Moreover, since there has been absolutely no showing that any consumers have heard this term, there is no possibility (let alone probability) that an appreciable number of consumers will be confused regarding it.

Plaintiffs also have not obtained a federal trademark registration for L'Air. Their registration of L'Air du Temps provides protection against another's confusing use of component parts of that trademark; however, it does not, without a showing of secondary meaning for a particular component part, provide full trademark protection for that part alone. *See Beneficial Corp.,* 529 F.Supp. at 447 n. 1. Plaintiffs have not shown any consumer-directed use of L'Air, alone, to identify the L'Air du Temps products. Plaintiffs have used the words "L'Air" in conjunction with other words in catchy promotions (e.g., "L'Air Luxury Pair"); however, in each such instance, the full trademark L'Air du Temps was listed in the promotion or advertisement describing the fragrance product itself and the words "L'Air" were used only as part of the promotional slogan. Moreover, in light of the conflicting evidence presented as to whether consumers recognize, or refer to, the L'Air du Temps products simply as L'Air, plaintiffs have not sufficiently demonstrated, at this point, that the words L'Air have a secondary

meaning identifying their L'Air du Temps products. Accordingly, for the purpose of determining plaintiffs' entitlement to interim relief, there is insufficient evidence of trademark use and secondary meaning to demonstrate a protectible trademark interest in L'Air, standing alone.[5] *Cf. United Rum Merchants Ltd. v. Fregal, Inc.,* 216 U.S.P.Q. 217, 219 n. 5 (1982) (eschewing analysis of claimed rights to "TIA" as a separate mark for holder of trademark rights to "TIA MARIA" in opposition proceeding regarding registration of "TIA LOLA").

Thus, the question in this case is whether an appreciable number of consumers are likely to be confused between L'Air du Temps products and L'air D'or products, or as to the source of either. The Court finds that this is a close question. Nonetheless, applying the criteria set out above, the Court on balance finds that the plaintiffs have not shown that confusion is likely, or at least not likely enough to satisfy the Court that irreparable harm will result in the absence of interim relief.

1. Similarity of the Marks.

The two marks involved are similar, but certainly not identical. Both marks are in French. Both marks feature L'Air as their first words. Both marks are written in similar script (although plaintiffs' script does appear to be more of an italic script while defendants' script appears to be more of a stylized cursive script, *see Grotrian, Helfferich, Schulz, Th. Steinweg Nachf. v. Steinway & Sons,* 523 F.2d 1331, 1339 (2d Cir.1975) (appropriate to consider differences in typeface of two marks)). There the similarities end.

The full marks present different overall impressions. L'Air du Temps is a French idiom, difficult to pin down as to its specific

meaning.[6] Likewise, the expression, and therefore the mark, conveys an airy, elusive, mellifluous image. L'air D'or is a more compact, readily definable expression. This mark conveys a solid, regal image.

The marks are mere words, but they must be viewed in the context of how they are presented to fully assay their similarity. *See Vitarroz,* 644 F.2d at 968; *see also Plus Products,* 722 F.2d at 1007 (comparing make-up of logos). Plaintiffs' mark is set off by quotation marks, but in all other respects is presented simply in words. *See* Illustration 1. Defendants' mark is presented in a logo—the words are bordered above and below by lines, forming a band which is set in a circle. *See* Illustration 2. The capitalization of letters in the marks also differs.

The marks should also be viewed in the context of the products' packaging. *See Plus Products,* 722 F.2d at 1007; *Lever Bros. Co. v. American Bakeries Co.,* 693 F.2d 251, 257 (2d Cir.1982). The packaging is quite distinct. Plaintiffs' products are packaged in pale yellow boxes and wrappings with gold lettering (in a few cases, the packaging is gold). Defendants' products are packaged in burgundy boxes and wrappings with white lettering (in some instances the lettering is gold). Plaintiffs' perfume is housed in a pale yellow cardboard carton; defendants' in a burgundy velvet vault-like carton. Finally, plaintiffs' perfume is bottled in a unique, distinctive Lalique crystal flacon, with doves perched atop the cover. Defendants' perfume is bottled in a simple decanter.

Moreover, plaintiffs nearly always use their well-known trade name Nina Ricci in their presentation and packaging of L'Air du Temps products. This further lessens the likelihood that confusion will follow

---

**5.** This determination, of course, does not preclude plaintiffs from ultimately establishing some trademark rights to the term "L'Air," standing alone. The Court notes, however, that insofar as plaintiffs claim an interest in L'Air as a separate mark, the Court feels that that mark is an appropriate, but weak, one for perfumes. *See Chandon Champagne Corp.,* 335 F.2d at 536 (Perignon weak mark for champagne because it is appropriate as an historic reference to the

putative inventor of that exquisite potable). The Court's belief that L'Air is an appropriate mark for perfume is confirmed by the advertisement submitted by plaintiffs (Exhibit A to Affidavit of Ruth Dimenstein). Macy's apparently made an independent determination that perfume gives the wearer a certain "air."

**6.** See footnote page 3, *supra.*

from these similar marks. *See McGregor-Doniger Inc.*, 599 F.2d at 1134.[7]

In sum, while the marks are somewhat similar, the impact of that similarity is substantially diminished by the overall impression the marks make, especially when viewed in context. Thus, this factor weighs only slightly in plaintiffs' favor.

## 2. Strength of the Mark.

▇▇▇▇ The strength of the mark is a measure of its distinctiveness, of its "tendency to identify the goods sold under the mark as emanating from a particular ... source." *McGregor-Doniger, Inc.*, 599 F.2d at 1131. Marks are generally classified into four groups representing their distinctiveness—generic, descriptive, suggestive, and arbitrary or fanciful. *See, e.g., Plus Products*, 722 F.2d at 1005; *Lever Bros. Co.*, 693 F.2d at 256. A generic mark, afforded no trademark protection, is one "that refers, or has come to be understood as referring, to the genus of which the particular product is a species," *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9 (2d Cir.1976), e.g., thermos. A descriptive mark, entitled to some protection generally, is one that "forthwith conveys an immediate idea of the ingredients, qualities or characteristics of the goods." *Stix Products, Inc. v. United Merchants & Mfrs.*, 295 F.Supp. 479, 488 (S.D.N.Y.1968). A suggestive mark, generally entitled to somewhat more protection than a descriptive mark, is one which "requires imagination, thought and perception to reach a conclusion as to the nature of the goods." *Id.* Finally, an arbitrary or fanciful mark, generally entitled to the greatest amount of protection, is one that in no way describes the nature of the products—either because it is a coined (or fanciful) name, e.g., Exxon, or because it is a common word used in an unfamiliar (or arbitrary) way, e.g., "Ivory" to refer to soap. *See Abercrombie & Fitch Co.*, 537 F.2d at 9, 11. Classification alone, however, does not necessarily determine the

level of protection a mark is entitled to, since it is entirely possible for a suggestive mark, and even for an arbitrary mark, to be weak and deserving of little protection. *See, e.g., Plus Products*, 722 F.2d 999 ("Plus" a suggestive but weak mark); *Lever Bros. Co.*, 693 F.2d 251 ("Autumn" an arbitrary, but weak, mark as to margarine); *DuPont Cellophane Co. v. Waxed Products Co.*, 85 F.2d 75 (2d Cir.), *cert. denied*, 299 U.S. 601, 57 S.Ct. 194, 81 L.Ed. 443 (1936) ("cellophane," originally a coined name, became at best a weak descriptive mark as consumers recognized the name as describing the product).

▇▇▇▇ The strength of a mark is also often ascertained by looking at the extent of advertising invested in it, and by the volume of sales of the product. *See Beneficial Corp.*, 529 F.Supp. at 449.

L'Air du Temps is a suggestive mark for perfume and other fragrance products. *Cf. Estee Lauder, Inc. v. Cinnabar 2000 Haircutters, Inc.*, 218 U.S.P.Q. 191 (S.D.N.Y. 1982) ("Cinnabar" a suggestive mark for fragrances). Moreover, L'Air du Temps is advertised extensively and sells very well. Accordingly, I find that it is a fairly strong mark. The strength of the L'Air du Temps mark, however, is diminished somewhat in that the element it shares with the allegedly infringing mark, L'Air, is particularly appropriate for fragrances, and is, to that extent a weak suggestive mark. *See Chandon Champagne Corp.*, 335 F.2d at 536 ("Perignon" weak mark for champagne). In sum, I find that this factor weighs slightly in plaintiffs' favor.

## 3. Similarity of the Products.

Obviously, the products involved are similar. Plaintiffs market expensive, high quality perfume and other toiletries and fragrance products, under the L'Air du Temps trademark. Defendants market expensive, high quality perfume, and hope to market other toiletries and fragrance prod-

**7.** The likelihood that consumers will be confused is especially diminished when the trade name which always appears with one of the marks is one as independently strong as the

Nina Ricci mark is. *See E.T.F. Enters., Inc. v. Nina Ricci, S.A.R.L.*, 523 F.Supp. 1147, 1154 (S.D.N.Y.1981) (discussing strength of Nina Ricci mark).

ucts, under the L'air D'or trademark. The impact of this similarity, however, is diminished significantly by two dissimilarities: price and a particular ingredient.

Both perfumes are expensive, but the difference in price is substantial. One ounce of the junior user's perfume, L'air D'or, sells for $275, roughly 175% of the price of one ounce of L'Air du Temps, which sells for $160. The difference in price is less dramatic in the smaller size; however, it is still substantial. One-quarter ounce of L'air D'or sells for $95, roughly 160% of the price of one-quarter ounce of L'Air du Temps, which sells for $60.

More significantly, the products themselves are readily distinguishable because of the presence of 23 carat gold flakes in L'air D'or. This ingredient makes L'air D'or perfume a unique [8] product and has led to a great deal of media attention and consumer fascination. Moreover, defendants have consistently tried to present their product as a hybrid of jewelry and fragrance. Thus, although it would appear that L'air D'or will succeed, if at all, as a perfume, and not as an item of jewelry or as some hybrid between the two, it is clear that the products are readily distinguishable.[9] Accordingly, I find that this factor weighs only slightly in plaintiffs' favor.

### 4. Bridging the Gap.

Insofar as the products are different, there is no evidence that plaintiffs have any intention of bridging the gap into what might be considered unconventional, or gimmicky, fragrance products by infusing precious metals into their highly successful perfume. Thus, to the limited extent that this factor is relevant at all to the determination at hand, it weighs in defendants' favor.

**8.** It is too early to tell whether the gimmicky flakes of gold will make L'air D'or a truly saleable item or the quintessential "flash in the pan."

**9.** The Court is more troubled about the similarities which may exist when, and if, defendants expand their product line. Presumably, such

### 5. Actual Confusion.

Plaintiffs did not submit any credible evidence of actual consumer confusion. One of plaintiffs' witnesses, a L'Air du Temps salesperson, surmised that some consumers had been confused between the new L'air D'or and the old L'Air du Temps based on questions they had asked as to whether the L'Air du Temps product they had just sampled was a new product. Given the extreme sketchiness of the testimony, however, the Court does not feel it would be justified in concluding that actual consumer confusion was demonstrated. The Court does recognize that it is difficult to demonstrate actual confusion on the part of retail customers. *See Plus Products*, 722 F.2d at 1006; *see also W.E. Bassett Co. v. Revlon, Inc.*, 435 F.2d 656, 662 (2d Cir.1970). The Court also recognizes that plaintiffs' task in proving actual confusion is all the more difficult because defendants' product has been on the market for a relatively short period of time. *Compare Plus Products*, 722 F.2d at 1006 (inability to show actual confusion in face of three years of substantial sales by junior user strong indication that confusion unlikely). Accordingly, the Court finds that the absence of actual customer confusion weighs only slightly in defendants' favor.

### 6. Quality of Defendants' Product.

L'air D'or is an expensive, apparently high-quality product. Plaintiffs even state that "[t]he quality of defendants' products is not an issue here." Plaintiffs speculate, however, that irrespective of the quality of L'air D'or, because its aroma is different from that of L'Air du Temps, it will damage the L'Air du Temps reputation. The Court is unpersuaded that persons sufficiently familiar with L'Air du Temps to recognize its distinctive aroma could mistakenly purchase or use L'air D'or believ-

new products that defendants may market will not contain the distinguishing pure gold flakes. At this point, however, there is insufficient ripe evidence before the Court regarding products not yet marketed to justify imposing a preliminary injunction against the use of the name "L'air D'or" for them.

ing it to be the same product. As to any other customers purchasing L'air D'or, its high quality will in no improper way harm the reputation of plaintiffs' mark. *See Lever Bros. Co.*, 693 F.2d at 258. Accordingly, I find that this factor weighs in defendants' favor.

### 7. Defendants' Good Faith.

Plaintiffs urge the Court to find that defendants acted in bad faith in choosing the L'air D'or name, intending to trade off the L'Air du Temps name. Plaintiffs argue that such a finding is indicated in this case drawing inferences from the popularity of the L'Air du Temps trademark, from the use of parts of both L'Air du Temps and Les Colombes d'Or, and from the failure of defendants to do a trademark search, or to seek the advice of counsel, in the United States prior to selecting the name.

Defendants have demonstrated persuasively that the choice of L'air D'or as the name for their product was made long before plaintiffs made any public utilization of the term Les Colombes d'Or, and was made without any knowledge whatsoever of that term. Moreover, as discussed above, plaintiffs have not shown *any* consumer-directed use, or *any* consumer recognition, of the term Les Colombes d'Or. Defendants would have nothing to gain from borrowing a term from plaintiffs if no one would recognize the origin of that term. Thus, the Court finds plaintiffs' argument that the combination of L'air and D'or in the same mark represents an intentional effort to purloin two of plaintiffs' valuable and distinctive marks to be a specious one. The presence of the words "D'or" in defendants' mark in no way supports a finding of bad faith on the part of defendants.

Defendants also presented credible evidence that when they had narrowed their choice of names to two with similar meanings (albeit with very different impacts)— Essence of Gold and L'air D'or—they did

seek the advice of Canadian counsel and did have a trademark search performed in Canada. Plaintiffs' mark is used in Canada. The Canadian search uncovered and counsel's advice dealt with the presence of the L'Air du Temps mark in the marketplace. While it may have been wiser and more cautious for defendants to do the same in this country as well, there is no reason to find that that was necessary or to infer gross negligence or bad faith from defendants' failure to do so.[10]

Defendants' ultimate decision to use the name L'air D'or, rather than Essence of Gold, comported with the advice they had received from their Canadian counsel, and demonstrates that their "process of decision was reasoned and in good faith." *See Lever Bros. Co.*, 693 F.2d at 258 (quoting district court opinion below, 537 F.Supp. 248, 256). Furthermore, defendants' efforts to market their product as a hybrid jewelry/fragrance product, in contradistinction to a simple fragrance product, demonstrates that they did not intend to improperly trade off of the reputation of plaintiffs' mark. Finally, and most persuasive to the Court, defendants' choice of name is entirely apropos for the product. Thus, the Court finds that defendants' choice of name was made in good faith. Accordingly, this factor weighs in defendants' favor.

### 8. Sophistication of the Buyer.

There are apparently two classes of consumers who commonly purchase expensive perfumes—women who use the product and men who give the product as gifts. Women who use expensive perfumes are discriminating and sophisticated consumers. They know their perfume. Plaintiffs recognize this: indeed, they argue that women users of L'Air du Temps are familiar enough with the fragrance and discriminating enough to notice the difference of the aroma of L'air D'or should they mistak-

---

**10.** The Court recognizes that the standard of infringement may be different under Canadian law (see Defendants' Exhibit 12, p. 2) ("The test in determining whether or not confusion will exist is the test of an ordinary consumer for the product having imperfect recollection."); nonetheless, the Court feels that this difference is not substantial enough to indicate that defendants' failure to search its mark and to obtain counsel's advice in the United States was in bad faith.

enly use that product. The Court agrees; however, given the sophistication of these consumers, the Court finds it highly unlikely that these consumers will confuse the two products or mistakenly use L'air D'or. *See Plus Products,* 722 F.2d at 1007.

Men who purchase expensive perfumes as gifts are somewhat less discriminating. Plaintiff's posit the typical male purchaser as awkward, uncomfortable, and anxious to buy and run. Insofar as the male purchaser posited is an impulse purchaser, the likelihood that these less-sophisticated consumers will be confused is diminished somewhat by the obvious differences in the overall appearance of the products and their packaging. *See Beech-Nut, Inc. v. Warner-Lambert Co.,* 480 F.2d 801, 804 (2d Cir.1973). Nonetheless, the male purchaser is less sophisticated in the area of perfumes than his female counterpart, and therefore somewhat more likely to be confused.

In sum, the Court finds that there are two relevant consumer groups—one of which is very sophisticated and unlikely to be confused, the other of which is less sophisticated and more likely to be confused. On balance I find that this factor weighs only slightly in defendant's favor.

9. Plaintiffs' Delay in Asserting Claim.

Plaintiffs became aware of defendants' product no later than mid-November, 1984. On December 13, 1984, plaintiffs sent a cease and desist letter to Alcourt, Gemcraft, and Bloomingdale's claiming infringement and demanding that defendants' products not be sold under the name "L'air D'or." On December 27, 1984, plaintiffs sent a similar letter to Jaytab. Counsel for both sides conferred in an attempt to resolve the dispute without resort to the courts. Apparently, counsel had four telephonic conversations between January 16, 1985, and February 1, 1985. The discussions were fruitless and all settlement talks broke down. Plaintiffs did not file this action or seek injunctive relief until March 15, 1985.

Defendants, relying on *Citibank, N.A.,* 756 F.2d 273, argue that plaintiffs' delay in seeking injunctive relief is sufficient evidence that they are not suffering irreparable harm. *Citibank, N.A.* involved the availability of a preliminary injunction in a trademark infringement action over the use of the name "Citytrust" in New York State. Citibank sought to enjoin Citytrust, a Connecticut bank, from opening banks in New York under the name "Citytrust." Citibank, however, did not seek the injunction until "more than ten weeks after it learned directly of Citytrust's plans, and more than nine months after it received notice through the press" of those plans. 756 F.2d at 276. The Second Circuit, relying on this delay, as well as two other significant facts, held that Citibank had made an insufficient showing of irreparable harm to justify the entry of a preliminary injunction.

The instant case is distinguishable. The additional facts relied on by the court in *Citibank, N.A.* showed that Citibank was able to co-exist with Citytrust: indeed, Citibank had voluntarily entered Citytrust's "territory"—Connecticut—and operated there without claim of irreparable injury for six years. There are no such additional facts present here. Moreover, conspicuously absent from *Citibank, N.A.* is any evidence that the delay in seeking judicial relief resulted, even in part, from the parties' extra-judicial efforts to resolve the dispute prior to resorting to the courts. Here, plaintiffs sent cease and desist letters to defendants within four to six weeks after they learned of the alleged infringement, and attempted thereby to obviate the need for judicial intervention in resolving the dispute. Such efforts are to be encouraged. Accordingly, defendants' argument that plaintiffs waited some sixteen weeks before seeking relief from this Court, while technically accurate, is misguided. Plaintiffs inexplicably delayed approximately six weeks from the breakdown of the settlement talks before they sought relief from this Court. That delay, alone, however, would not suffice to support a finding of no irreparable harm.

Nonetheless, the Court does feel that plaintiffs' inexplicable delay, coupled with their seeming lack of interest in defend-

ants' product, during very busy selling seasons is evidence that limited harm is present and that there is little likelihood of confusion in the marketplace. During the Christmas season, the most active period of the year in retail sales of perfume, plaintiffs objected to defendants' product through one cease and desist letter. No representative of plaintiffs visited any of the stores selling L'air D'or to investigate the rival, allegedly infringing product. There was no effort made to verify the location of the new product or to ascertain whether any actual confusion was occurring. This hardly evinces the tenacity with which one would expect an irreparably injured party to press its claims during its busiest season. Then, after settlement talks ended without success, plaintiffs delayed another six weeks—through the Valentine's Day period, another high volume sales period for perfume—before seeking this relief.

The Court finds that plaintiffs' delay in seeking relief and their nonchalant reaction to the presence of L'air D'or in the marketplace indicate that even plaintiffs felt there was little real likelihood that consumers would be confused between the products. Accordingly, this factor weighs in defendants' favor.

10.  Balancing of Conflicting Interests.

Defendants demonstrated at the hearing held herein that the entry of a preliminary injunction against the use of the name "L'air D'or" would cause dire consequences for them. Defendants could not adapt the packaging already completed, or well along the way to completion, to reflect a different name for the product without incurring tremendous expense—an amount which in and of itself could potentially bankrupt the endeavor and destroy the product. The alternative for defendants, in the face of an injunction, would be to hold all U.S. sales in abeyance pending the final outcome of this litigation. Such a delay during the product's incipiency would surely spell the product's doom. Accordingly, defendants' interest in the continued use of the name they chose in good faith is a strong one.

Balanced against this interest, plaintiffs have not adequately demonstrated that the absence of interim relief would preclude "the unimpaired continuation of their trade mark use." *Avon Shoe Co. v. David Crystal, Inc.*, 279 F.2d 607, 613 (2d Cir.), *cert. denied*, 364 U.S. 909, 81 S.Ct. 271, 5 L.Ed.2d 224 (1960). Plaintiffs have not sufficiently demonstrated that consumer confusion is likely; therefore, their strong reputation would appear safe. *See McGregor-Doniger Inc.*, 599 F.2d at 1139. Likewise, in light of the improbability that plaintiffs would market a similar product, perfume infused with non-functional precious metals, as a part of the L'Air du Temps line, plaintiffs' freedom of expansion has not been unduly restricted. *Id.* On balance, defendants' interest in the continued use of their trademark outweighs plaintiffs' interests in precluding that use and in the continued use of their own trademark, which this Court finds remains unimpaired. Accordingly, this factor weighs in defendants' favor.

### CONCLUSION

The Court has thus reviewed all of the relevant factors bearing on the likelihood that an appreciable number of consumers will be confused between the products, or as to the source of either. Based on that analysis, the Court finds that plaintiffs have not demonstrated that a likelihood of confusion exists. Accordingly, plaintiffs cannot avail themselves of the "presumption" of irreparable harm in this case. *Compare In re Vuitton*, 606 F.2d 1; *Omega Importing Corp v. Petri-Kine Camera Co.*, 451 F.2d 1190, 1195 (2d Cir. 1971). The Court finds that plaintiffs' other arguments regarding irreparable harm are without merit. Each depends upon improper consumer confusion. Since the plaintiffs have not shown that such confusion is likely, the Court finds that plaintiffs' reputation and goodwill are secure during the pendency of this action, and therefore that there is no irreparable harm here which would justify the imposition of the relief requested. Likewise, by failing

to demonstrate likelihood of confusion, plaintiffs have failed to demonstrate likely success on their state [11] and federal claims.

To paraphrase a former member of this Court, "where the key word[s] [are] free as ['L']air['], small variations are likely to make enough of a difference to ward off charges of infringement." *Beech-Nut, Inc. v. Warner-Lambert Co.*, 346 F.Supp. 547 at 549 (1972). Plaintiffs have failed to meet their burden of proof with respect to the requirements for obtaining a preliminary injunction.[12] Accordingly, their motion for a preliminary injunction is DENIED. The parties are to proceed with discovery forthwith with an eye to an expedited trial on the merits of this action.

SO ORDERED.

Illustration 1

Illustration 2

---

**11.** *See Beneficial Corp.*, 529 F.Supp. at 451–52 (state anti-dilution law requires either likelihood of confusion or bad faith; neither demonstrated here).

**12.** The Court's discussion of the balance of conflicting interests above also indicates that plaintiffs have not demonstrated a balance of hardship tipping decidedly in their favor.